**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**MICHAEL LOZOWSKY,**

**FINDINGS OF FACT AND**
**Plaintiff,**            **CONCLUSIONS OF LAW**

-against-                  **07-CV-3684 (RLM)**

**PLANET AUTOMALL, INC., et al.,**

**Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Michael Lozowsky ("plaintiff" or "Lozowsky") claims that he visited

defendant Planet Automall, Inc. ("Planet Automall") on several occasions for the purpose of

purchasing two motor vehicles in all-cash transactions. According to Lozowsky, after

obtaining the second vehicle, he learned for the first time that he had entered into financing

agreements for both cars with defendant M&T Bank Corporation ("M&T Bank"). Lozowsky

subsequently brought suit against Planet Automall and M&T Bank (collectively, "defendants"),

alleging fraud and unjust enrichment in connection with the sale and financing of the two

vehicles. See Complaint, ECF Docket Entry ("D.E.") # 1. Defendants asserted a

counterclaim against Lozowsky for breach of contract for failing to comply with his payment

obligations under the financing agreements. See Answer, D.E. # 5, ¶¶ 4-5.

After waiving a jury trial and consenting to have the case handled by a magistrate judge

for all purposes, the parties proceeded to a three-day bench trial before this Court beginning on

June 5, 2008 and ending on June 9, 2008. Having considered the pleadings, the evidence, and

the parties' arguments, the Court makes the following findings of fact and conclusions of law,

and directs that the complaint be dismissed and that judgment be entered in favor of M&T

Bank on its counterclaim, in an amount to be determined following further submissions by the parties.

## FINDINGS OF FACT

Lozowsky was 51 years old at the time of the disputed transactions. Born in the former Soviet Union, Lozowsky immigrated to the United States in 1990 and is proficient in English. He has been employed for the last several years as a truck driver, having previously graduated from truck-driving school in this country.

On the evening of February 3, 2007, Lozowsky visited Planet Automall in Long Island City, Queens, to examine a used 2003 Infiniti Q45 automobile. While there, Lozowsky dealt with a sales manager named Julio Estrada ("Estrada"). Because the Infiniti was not on the lot that day, Lozowsky, at Estrada's request, left a $500 deposit to have the car prepped and brought to the lot later in the week. See Ex. B.[1] Three days later, on February 6, 2007, Lozowsky returned to Planet Automall to take the Infiniti for a test drive. Lozowsky was accompanied by his friend Ted Gill ("Gill"),[2] who had been involved with him in connection with three prior used-car purchases.[3] Estrada presented Lozowsky with a "Buyer's Order Sheet," which Estrada and Lozowsky both signed. See Ex. G. Pursuant to the "Buyer's

---

[1] "Ex." refers to exhibits entered into evidence at trial.

[2] Estrada, Gill and Lozowsky all testified at trial, as did Kinney Galani, Planet Automall's president.

[3] Lozowsky and Gill claimed that, for each such transaction, they were paid fees of $300 and $100, respectively, for purchasing and transporting the vehicle to Russia. The "principal" in this business was Lozowsky's nephew, Serge, who would wire funds into Lozowsky's account and would travel back and forth between Russia and the United States.

Order Sheet," Planet Automall agreed to sell the Infiniti to Lozowsky for $29,995.00. See id.

Lozowsky and Estrada then completed a credit application, see Ex. I, after which Estrada escorted Lozowsky, along with the papers, to Planet Automall's finance office.

In the finance office, Lozowsky met with a finance manager named Hector Ugarriza ("Ugarriza"). Ugarriza presented Lozowsky with another contract, which they both signed. See Ex. A. That document reflected an agreed-upon price of $29,995.00 for the car, plus an extended warranty, VIN etching, dealer preparation, tax, title and documentary fees, for a total purchase price of $43,999.01. The document also reflected Lozowsky's aggregate deposit of $21,000 (consisting of his $500 deposit on February 3, 2007, and a $20,500.00 check on February 6, 2007, see Ex. B), yielding a final balance of $22,999.01, to be financed with M&T Bank. Lozowsky and Ugarriza also executed a "Retail Installment Contract," which listed the pertinent terms of the financing as follows: 11.24 percent APR, $7,309.39 finance charge, $22,999.01 amount financed, and $30,308.40 in total payments, divided into 60 payments of $505.14 each. See Ex. C. After the closing documents were finalized,[4] copies were provided to Lozowsky, who left with the Infiniti that day.

On February 17, 2007, Lozowsky and Gill returned to Planet Automall to purchase a second used vehicle, this time a Lexus RX 330. Lozowsky once again dealt with Estrada. The two negotiated the price and executed a preliminary contract whereby Planet Automall agreed to sell the Lexus to Lozowsky for $38,000.00. See Ex. A-2. Afterwards, at Lozowsky's

---

[4] The closing documents included a "Used Vehicle Invoice" (reflecting a total purchase price of $43,999.01), a "Limited Warranty" contract, title and license applications, and a "Notice to the Consumer" noting Lozowsky's agreement to finance part of the purchase price. See Exs. E, F, H, J, M. All of these documents were signed by Lozowsky.

request, Estrada accompanied Lozowsky to the finance department, where they formalized

their preliminary agreement into a final contract which, in addition to the agreed-upon

$38,000.00 price for the car, included a number of extras (i.e., extended warranty, VIN

etching, dealer preparation, tax, title and documentary fees), yielding a total purchase price of

$56,337.55. See id. (second page). The document also reflected an aggregate down payment

by Lozowsky in the amount of $26,650.00, with a balance of $29,687.55, to be financed with

M&T Bank. As with the Infiniti transaction, Lozowsky then executed a "Retail Installment

Contract," which listed the pertinent terms of the financing as follows: 10.99 percent APR,

$9,208.05 finance charge, $29,687.55 amount financed, and $38,895.60 in total payments,

divided into 60 payments of $648.26 each. See Ex. C-2. After additional closing documents

were executed,[5] Estrada gave Lozowsky a "We Owe" confirmation, which stated that Planet

Automall owed Lozowsky a shifter knob and an extra key for the Lexus. See Ex. N-2.

At trial, Lozowsky testified (in English) that he and Estrada had agreed to different

contract terms. According to Lozowsky, the agreed-upon purchase prices for the Infiniti and

Lexus were $21,000.00 and $26,650.00, respectively. He claimed that his cash payments

were not merely down payments, but instead were payments in full. Accordingly, Lozowsky

contended that he never agreed to any financing. To support his contention, Lozowsky pointed

to a "We Owe" document from the Infiniti transaction on which Estrada had written

"Nothing." See Ex. N. Lozowsky claimed that Estrada handed him this document with the

---

[5] Similar to the Infiniti transaction, the closing documents included a "Used Vehicle Invoice,"
a "Limited Warranty" contract, title and license applications, and a "Notice to the Consumer"
noting that Lozowsky had agreed to finance part of the purchase price. See Exs. E-2, F-2, J-2,
M-2. Other than the "Used Vehicle Invoice," these documents were signed by Lozowsky.

understanding that Lozowsky owed no further payments. Lozowsky also asserted that he never

agreed to purchase warranties or VIN-etching for the vehicles. Although he acknowledged his

signatures and initials on the documents evidencing all the terms of the transactions and

financing, Lozowsky asserted that the documents had been blank when Estrada handed them to

him, and that he did not read the documents closely, nor did he ask Estrada for any additional

time to review them.[6]

Lozowsky's assertions are simply not credible. First, the Court found Lozowsky to be

an evasive witness, particularly on cross-examination.[7] Second, on each of the two final

contracts, which listed the total prices as being $43,999.01 and $56,337.55 and bore

Lozowsky's signature, Lozowsky also separately placed his initials next to certain individual

amounts, including the warranty and etching charges and, on the Lexus contract, the amount to

be financed. See Exs. A & A-2 (second page). The Court declines to credit Lozowsky's claim

that he initialed next to items and signed blank financing documents with no intention of

purchasing those items or entering into any financing arrangement.[8] Third, the only reasonable

reading of the "We Owe" documents is that the obligations listed thereon relate to parts to be

installed and/or provided, and run from the dealership to the customer and not the other way

---

[6] Gill, who described himself as Lozowsky's "toady," testified that he was not in the room when Lozowsky signed for either vehicle, and that he was neither involved in nor privy to the negotiations over the price of either vehicle.

[7] Among other things, Lozowsky was less than forthcoming in describing the nature of his relationship with his nephew Serge, and in identifying the individuals who subsequently took possession of the two vehicles, which never left the United States.

[8] Notably, one of the financing documents includes handwritten notations by Lozowsky reflecting his employment information. See Ex. I.

around. For instance, these form documents contain language stating, "I hereby accept this WE-OWE with the understanding . . . that I must make an ADVANCE APPOINTMENT WITH THE SERVICE DEPARTMENT before the above work can be performed." See Exs. N & N-2 (emphasis in original). Fourth, Lozowsky's claim that he did not receive the loan repayment coupon book from M&T Bank until February 20, 2007, after he purchased the second car on February 17, 2007, is belied by a stipulation that the coupon book was mailed to him on February 12, 2007. See Joint Pretrial Order, D.E. #25, at 2. Finally, although the vehicles were allegedly intended for export, Lozowsky made no arrangements to have them flat-bedded and transported to port for shipment overseas, which would have obviated the need for the dealer to charge Lozowsky for the applicable state sales tax.[9]

## CONCLUSIONS OF LAW

### I. Choice of Law

A federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice-of-law rules. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1538-39 (2d Cir. 1997) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). New York follows the "center of gravity" or "grouping of contacts" approach to resolve choice-of-law issues in cases involving contractual disputes. See id. at 1539 (citation omitted). Under that approach, in order to determine which state's law applies, courts must weigh factors such as (1) the place of negotiation, contracting, and

---

[9] The Court credits Estrada's testimony that Lozowsky never told him that the cars were being shipped overseas and that, had Lozowsky done so and provided the appropriate documentation, the state sales tax would not have been imposed on either transaction.

performance; (2) the location of the contract's subject matter; and (3) the domicile, place of

incorporation, and place of business of the contracting parties. See id. (citation omitted).

Where a contract contains a choice-of-law clause, however, and "a court finds that . . . [the]

clause is valid, the law selected in the clause dictates how the contract's provisions should be

interpreted[.]" Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 332 (2d

Cir. 2005).

Here, both the purchase and financing agreements signed by the parties contain choice-

of-law clauses dictating that New York law shall govern disputes arising from the agreements.

See Ex. A, Additional Terms & Conditions, ¶ 10; Ex. C, Additional Terms & Conditions, ¶

26; Ex. A-2 (second page), Additional Terms & Conditions, ¶ 10; Ex. C-2, Additional Terms

& Conditions, ¶ 26. In any event, because the agreements were negotiated and signed in New

York, defendants are both New York corporations, and defendants performed their obligations

under the contracts in New York, New York law would govern the claims in this case, even in

the absence of the choice-of-law clauses.

## II. Lozowsky's Claims

Lozowsky's complaint, which is largely nonsensical, contains four counts of fraud, one

count of "false representation," one count of fraudulent inducement, and one count of unjust

enrichment.[10] The fraud and "false representation" claims are, in actuality, fraudulent

---

[10] In addition, Lozowsky seeks attorney's fees and costs. See Complaint, D.E. # 1, ¶¶ 53-54, 61-63. According to the complaint, under "the terms of the Promissory Notes, Defendant is responsible for any and all Attorneys fees and Court cost incurred by the Plaintiff as a result of Defendants fraud." Id. ¶ 54 (grammatical errors in original). Assuming the "Promissory Notes" referred to are the financing agreements Lozowsky claims he never agreed to, the

(continued…)

inducement claims, which allege that defendants duped Lozowsky into signing blank

documents and lied to him about the actual prices of the vehicles, so as to induce him into

signing the purchase and financing agreements. Consistent with this interpretation of the

claims, Lozowsky's theory at trial was that he was induced into signing the purchase and

financing agreements through fraud and undue influence.[11] Such claims, if proven, would

entitle Lozowsky to void his agreements with defendants. See Sun Forest Corp. v. Shvili, 152

F.Supp.2d 367, 393 (S.D.N.Y. 2001) (undue influence); Continental Airlines, Inc. v. Lelakis,

943 F.Supp. 300, 305 (S.D.N.Y. 1996) (fraudulent inducement).

### A. Fraudulent Inducement

"To prevail on [a claim] of fraudulent inducement and thereby render a contract

voidable under New York law, the party seeking to avoid the contract must demonstrate that in

entering the agreement, he justifiably relied to his detriment upon a false representation of a

material fact." Id. (citation omitted). Such reliance must be reasonable under the

circumstances. See id. (citations omitted). When an opponent of a contract alleges fraud in

the inducement, he must prove that fraud by clear and convincing evidence. See Mix v. Neff,

473 N.Y.S.2d 31, 33 (3d Dep't 1984) (citing Adams v. Gillig, 199 N.Y. 314, 323 (1910)).

---

[10](...continued)
contractual obligation to pay attorney's fees and costs runs from Lozowsky to M&T Bank, and
not the other way around. See Ex. C, Additional Terms & Conditions, ¶ 20; Ex. C-2,
Additional Terms & Conditions, ¶ 20. In any event, because Lozowsky has not prevailed in
this action, an award of fees and costs would not be warranted, even if Lozowsky could
establish a basis (contractual or otherwise) for such an award.

[11] Lozowsky did not plead undue influence in his complaint. Nevertheless, because the issue
was tried, "it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P.
15(b)(2).

Lozowsky contends that the documents handed to him by Estrada were blank, and that he did not have sufficient opportunity to review them before signing, implying that the blanks were filled in after his signature was affixed to those documents.  Lozowsky additionally alleges that Estrada made representations that Lozowsky's cash payments were payments in full, and that the "We Owe" document was presented to Lozowsky by Estrada with the understanding that Lozowsky owed no further payments.   Finally, Lozowsky maintains that he has only limited knowledge of English and, for that reason, did not fully appreciate the nature of the agreements he was entering into.  Lozowsky has failed to sustain his burden of proof as to each of these allegations.

To begin, Lozowsky's assertion that the purchase and financing documents had been blank when Estrada handed them to him simply is not credible:  Lozowsky admitted that he signed and initialed on the documents evidencing all the terms of the transaction and financing and that he did not read the documents closely, nor did he ask Estrada for any additional time to review them.  Simply put, "[t]he law does not relieve a person merely because he has failed to read a document which he has executed."  Humble Oil & Refining Co. v. Jaybert Esso Service Station, Inc., 294 N.Y.S.2d 190, 192 (2d Dep't 1968) (citations omitted); see also Continental Airlines, 943 F.Supp. at 305 ("If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent.") (quoting Pimpinello v. Swift & Co., 253 N.Y. 159, 162-63 (1930) (Cardozo, J.)).

Lozowsky's contention that Estrada misrepresented the purchase price of the vehicles is likewise incredible.  But even assuming *arguendo* that Estrada did in fact make the misrepresentations complained of, Lozowsky's failure to review the purchase and financing

agreements prior to signing those documents precludes him from claiming reliance on any representations made by Estrada that conflict with the terms of the contracts. See Lewin Chevrolet-Geo-Oldsmobile Inc. v. Bender, 639 N.Y.S.2d 180, 181 (3d Dep't 1996) (reversing post-trial judgment entered in favor of automobile purchaser who alleged that she had been induced by fraudulent representations of dealership employee to enter into retail installment contract containing terms less favorable to her than those orally represented: "Where, as here, a written instrument contains terms different from those orally or otherwise represented, a person is presumed to have read the writing[,] . . . may not claim that he or she relied on the representations[,] . . . [and] is conclusively bound by the terms of the . . . contract even though she may not have read it.") (citations omitted). Moreover, it strains credulity to suggest that Lozowsky, who had been involved in three prior used-car purchases, would have relied on such statements in the first place. See Humble Oil, 294 N.Y.S.2d at 192.

Nor would Lozowsky's supposed lack of fluency in English justify reliance on the alleged misrepresentations, especially given the fact that he had, at the time of the transactions at issue here, already purchased three other used cars. Cf. Continental Airlines, 943 F.Supp. at 307 ("[D]efendant's alleged inability to speak English does not obliterate the overarching requirement of a fraudulent inducement defense that his reliance on [plaintiff's] representations be justified and reasonable.") (citation omitted). Further, the Court rejects Lozowsky's suggestion that his English is in fact impaired: credibility aside, he testified competently in English, had lived in this country for 17 years at the time of the transactions, and had previously graduated from truck-driving school in this country. In any event, even if Lozowsky had established that his English was impaired, and that a misrepresentation had been

made, his own negligence in failing to review the purchase and financing agreements prior to signing, or to have those documents read or explained to him (for example, by his friend and business associate Ted Gill), would preclude any relief based on a theory of fraudulent inducement.  See id. at 305-06.

Accordingly, this Court rejects Lozowksy's contention that he was induced by fraud into signing the purchase and financing agreements with defendants, and finds that Lozowsky is not entitled to rescission of the agreements and/or damages on this ground.

**B. Undue Influence**

Lozowsky's claim of undue influence is likewise unavailing.  "Under New York law, a party claiming that it was unduly influenced to enter a contractual relationship must prove that it contracted under circumstances indicating that a 'relationship of control' existed and that the 'stronger' of the two parties had exerted influence over the other to 'destroy the weaker party's free will and substitute for it the will of the [other].'"  Sun Forest, 152 F.Supp.2d at 393 (quoting Hoffmann v. Sprinchorn, No. 95-CV-05793E (SC), 1997 WL 128352, at *3 (W.D.N.Y. Mar.13, 1997)) (alteration in original).  "The burden is heavy:  a party seeking to invalidate a contract must demonstrate that it was manipulated into signing a contract as a consequence of conduct worse than 'even pressure, no matter how bad' because 'undue influence is tantamount to a species of cheating.'"  Id. (quoting Kazaras v. Mfrs. Trust Co., 164 N.Y.S.2d 211, 221 (1st Dep't 1957) (Breitel, J.)).

For the same reasons that Lozowsky's fraudulent inducement claim fails, so too does his claim of undue influence.  Lozowsky has offered no evidence that Estrada exerted any influence over him, or that Lozowsky's mind was subverted at the time he executed the

purchase and financing agreements; his claim of undue influence rests solely on his unconvincing assertions that he is a "simple man" and not fluent in English. And, as previously discussed, Lozowsky's contention that he was manipulated into signing blank documents simply is not credible, particularly in light of his admission that he undertook no effort to read or review those documents or, in the alternative, to have those documents read to him.

Accordingly, this Court rejects Lozowsky's claim that he was unduly influenced to enter the purchase and financing agreements with defendants, and finds that Lozowsky is not entitled to rescission of the agreements and/or damages on this ground.

### C. Unjust Enrichment

Finally, Lozowsky's unjust enrichment claim fails as a matter of law, because a plaintiff cannot recover for unjust enrichment where, as here, a valid and enforceable contract exists. See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006) (collecting cases); Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987).

### III. M&T Bank's Counterclaim

In its answer to the complaint, M&T Bank interposed a counterclaim for breach of contract, based on Lozowsky's failure to comply with his payment obligations under the financing agreements for the two vehicles. "Under New York law, a plaintiff must prove four elements to prevail on a breach of contract claim: '(1) the making of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract and (4) damages suffered by the plaintiff.'" Eastman Kodak Co. v. STWB Inc., 232 F.Supp.2d 74, 91 (S.D.N.Y. 2002)

(quoting <u>Kreiss v. McCown DeLeeuw & Co.</u>, 37 F.Supp.2d 294, 298 (S.D.N.Y. 1999)).

Having found that Lozowsky is bound by both the purchase and financing agreements, the Court likewise concludes that Lozowsky's liability for breach of contract is clear. M&T Bank, by providing the financing necessary for Lozowsky's purchase of the Infiniti and Lexus, performed its obligations under the financing agreements. Lozowsky, by failing to make required payments, breached the terms of those contracts. And M&T Bank has clearly suffered damages: i.e., the balance owed by Lozowsky, plus interest and penalties, if any.

By July 9, 2009, M&T Bank is directed to file, via ECF, an updated statement of the amounts owed, including the basis for those amounts. Any response by plaintiff shall be filed by July 17, 2009.

## CONCLUSION

For all of the foregoing reasons, this Court directs that the complaint be dismissed and that judgment be entered in favor of M&T Bank on its counterclaim, in an amount to be determined following further submissions from the parties: M&T Bank is directed to submit the aforementioned statement of amounts owed by July 9, 2009. Plaintiff's response, if any, shall be filed by July 17, 2009.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**June 29, 2009**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**